**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LESTER GRZYBEK,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 06-C-5266 |
| v. | ) |
| | ) |
| **CANADIAN PACIFIC RAILROAD,** | ) HONORABLE DAVID H. COAR |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lester Grzybek ("Grzybek" or "Plaintiff") brought this suit against Canadian Pacific Railroad ("Soo Line" or "Defendant"), based on an alleged discriminatory termination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Now before this Court is Defendant's motion for summary judgment, brought pursuant to Federal Rule of Civil Procedure 56 (Docket No. 48). For the reasons stated below, Defendant's motion is GRANTED.

**1.  FACTS**

Plaintiff alleges violations of his rights under the ADA. As such, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it is a civil action arising under the laws of the United States. Venue is proper under 28 U.S.C. § 1391, as a substantial part of the events giving rise to Plaintiffs' claim occurred in this federal judicial district.

Plaintiff Grzybek worked as a switchman at Soo Line. In this position, Grzybek moved railroad cars from track to track. Failure to do his job properly could have resulted in injury or

death to Grzybek or other Soo Line employees. The switchman position is classified safety-sensitive by the Federal Railroad Administration.

In May 1996, Grzybek had a myocardial infarction. As a result, he underwent angioplasty. Following angioplasty, Grzybek was out of work for over a month. Upon returning to work, his workload increased. Grzybek attributes his ability to increase his workload to the fact that he felt so healthy. There were no job duties that Grzybek could not perform as a result of his angioplasty.

Following his angioplasty, Soo Line required Grzybek to provide annual updates regarding his cardiac health to verify his fitness for duty. These requests were based upon the determination of Dr. Daniel Janiga, Soo Line's Chief Medical Officer, that such updates were necessary.[1] Grzybek describes this new requirement as being "treated...differently" and receiving "limitations" as a result of his "perceived disability." (Pl.'s Facts Resp. ¶ 10.)

In August 1997, Soo Line requested that Mr. Grzybek provide it with medical records, EKG results, lab results, and information regarding any work-related restrictions Grzybek might have. Grzybek provided the requested information. In November 1998, Grzybek provided Soo Line a copy of lab test results from October 1998. Janiga asked Grzybek to also provide "office notes" from his most recent appointment with his doctor. Grzybek refused to provide the requested notes to Janiga, claiming that he thought that the request was "unreasonable." Specifically, in a December 22, 1998 letter, Grzybek stated: "I believe this to be not only an

---

[1]Plaintiff contends that the made no such determination, because he "never determined or believed that Mr. Grzybek was substantially limited in his ability to perform the switchman position, or any other position." (*See* Pl.'s Facts Resp. ¶ 14 (citing Janiga Aff. ¶ 8).) However, a failure to find that Gzrybek was not "substantially limited" does not contradict a determination that yearly tests were necessary for continued employment.

invasion of my privacy but find your request unnerving and unethical as an attempt to disrupt the confidentiality between my doctor and me." (Kern Aff. Ex. E.)

In response, Janiga's letter stated that a switchman is a safety sensitive position. He further explained that as Soo Line's Chief Medical Officer, it was his job to determine Grzybek's fitness for duty. Janiga stated that the office notes were needed to determine "whether you are or are not capable of performing the job given the work demands of your craft," and claimed that the request "is not an invasion of your privacy but simply ascertaining whether you are able to perform your job safely not only for your own safety but for the safety of your colleagues and the public." (*Id.* Ex. F.)

On January 29, 1999, Grzybek sent Janiga a letter stating that he had already sent a copy of a stress test from August 1997 and a blood cholesterol test from October 1998. Grzybek reiterated that he would not send any further medical information and that "continued harassment and intimidation with removal from service is inappropriate." On February 9, 1999, Janiga again responded in writing to Grzybek's refusal to provide the requested information regarding his cardiac condition. Janiga explained that while blood and cholesterol tests are helpful, such tests don't necessarily indicate what an individual's functional cardiac abilities are. According to Janiga, office notes in which the history and objective clinical findings are documented, or a narrative from an individual's physician, along with supplemental documentation such as a stress test and/or Echocardiogram, provide the best means of determining what an individual's functional cardiac abilities are.[2]

---

[2]Defendant disputes that the request for additional records was "legitimate" but does not dispute Janiga's contention that they would provide the best means for determining functional cardiac abilities. (Pl.'s Facts Resp. ¶ 28.)

Despite Janiga's explanation as to why he needed additional medical information, Grzybek still refused to provide it. Based on his continued refusals to provide the requested information, Soo Line removed Grzybek from service for approximately seventeen days without pay.

On February 9, 1999, Grzybek provided, "under protest," the requested information concerning his cardiac condition.

After Soo Line removed Grzybek from service for failure to provide his medical information, he filed a claim with his union seeking back pay for the time he was held out of service. This was eventually decided by the National Railroad Adjustment Board ("NRAB"). In pursuing his claim, Grzybek was represented by the General Chairman of his Union. A neutral arbitrator from the NRAB held that Soo Line was entitled to the medical information it sought and that Grzybek was not entitled to back pay for the days he was held out of work, finding:

> It is well established that the Carrier has the right and responsibility to ensure that its active employees are physically able to safely perform their duties . . . Given the fact that [Mr. Grzybek] had suffered an acute myocardial infarction in 1996 which required surgery, **we are not in a position to say that the Carrier's Chief Medical Officer acted unreasonably when he requested current information as to Mr. Grzybek's clinical status. Such information was clearly relevant in determining Mr. Grzybek's ongoing fitness for duty as a switchman.**
>
> ...
>
> [Mr. Grzybek] had been informed that the carrier needed annually updated medical information. When he chose not to provide that information, the carrier had the right to medically disqualify the claimant from service until medical documentation of fitness was submitted.

(Def.'s Facts Ex. 9 (emphasis added).) Grzybek admits that once he provided the requested medical information and was returned to service, his duties as a switchman were unchanged.

In 2002, Soo Line requested that Grzybek provide it with an update on his cardiac status, once again citing the safety-sensitive nature of his position as a switchman. Grzybek provided the requested information. In August 2003, Soo Line made its request for an update on Grzybek's cardiac status. In response, Grzybek provided Soo Line with lab reports and a copy of his EKG, similar in scope to the information found to be insufficient by the NRAB Arbitrator. As in 1999, Janiga determined that the lab tests and EKG provided inadequate information for him to determine whether Grzybek was fit to perform his job from a cardiac perspective. Soo Line, therefore, asked Grzybek to have his physician address his "functional ability from a cardiac perspective."[3]

Despite the arbitrator's ruling, Grzybek refused to provide any further information about his cardiac status, stating that he had provided "enough medical information." Grzybek also stated that he thought that the request for medical information was "an invasion of [his] privacy." On November 17, 2003, Soo Line sent Grzybek a second letter requesting information about his current functional abilities from a cardiac perspective and addressing whether Grzybek had any work-related restrictions. Grzybek again refused to provide the requested medical information.

On December 3, 2003, Soo Line wrote a third letter to Grzybek, citing the September and November requests for medical information, and again asking Grzybek to provide information regarding his functional abilities from a cardiac perspective and whether he had any work-related restrictions. Soo Line gave Grzybek until December 17, 2003 to provide the requested

---

[3]Plaintiff repeatedly attempts to contradict this and similar comments by pointing out that Janiga "never determined or believed that Mr. Grzybek was substantially limited in his ability to perform the switchman position, or any other position." (*See, e.g.*, Pl.'s Facts Resp. ¶ 38; *see also supra* note 1.) However, this does not contradict Defendant's assertion that the doctor believed it was necessary to make periodical determinations on this issue.

information. The letter stated that if Grzybek did not provide the requested information, by that time, he would be disciplined. Grzybek testified at his deposition that he fully understood that he would be disciplined if he did not provide the requested information. Grzybek further testified that he refused to provide the information because "there was nothing wrong with me." On January 19, 2004, Soo Line sent Grzybek a fourth letter stating that if he did not provide the requested medical information within 10 days, he would be disciplined. Still, Grzybek refused to provide the requested information.

On February 12, 2004, Soo Line conducted a hearing into the circumstances surrounding Grzybek's failure to provide the requested medical information. Grzybek was represented at the hearing by his Union representative. At the hearing, Grzybek was given an opportunity to explain why he refused to provide the requested medical information. Grzybek testified that he refused to provide the requested medical information because "it would be a waste of [his] time." He confirmed that he made this statement at his deposition.

Based on Grzybek's testimony at the hearing, as well as the other record evidence, Soo Line terminated his employment on February 19, 2004.

Grzybek testified that he does not believe that any manager or supervisor at Soo Line thought that he was physically unable to do his job as a switchman. He also admitted that no one at Soo Line ever placed any physical limitations on his ability to perform his switchman position. Moreover, Grzybek testified that he "felt comfortable that [he] would be returned to work" if he provided the requested medical information. Grzybek worked until February 19, 2004, the date of his termination, without a single workplace restriction. Grzybek acknowledged at his deposition that even though a neutral arbitrator determined that Soo Line was entitled to the

medical information Soo Line requested, he ignored that decision because "I think it's a federal, illegal act by the company to force employees to give out medical information over the threat of termination."

**2.      LEGAL STANDARD**

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law.  Fed. R. Civ. P. 56(c).  This is accomplished "when, after an adequate time for discovery, the non-moving party fails to establish the existence of a genuine issue of material fact for trial, Fed.R.Civ.P. 56(c), or make a showing sufficient to prove an element essential to his case on which he will bear the burden of proof at trial."  *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (mandating summary judgment in those circumstances).

When considering a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party."  *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).  Even so, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he or she must go beyond the pleadings and support contentions with proper documentary evidence.  *Celotex*, 477 U.S. at 322-23.  The successful non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and

quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. P. 56(c).

A non-moving party who bears the burden of proof on an issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir. 1989). This does not mean that the non-movant must resolve the issue of material fact conclusively, but rather must provide sufficient evidence to enable a reasonable jury to find in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Mere allegations in the pleadings, unsupported by record evidence, cannot create an issue of fact defeating summary judgment. *Burrell v. City of Mattoon*, 378 F.3d 642 (7th Cir. 2004). The Seventh Circuit has made it clear that "self-serving affidavits, without any factual support in the record, are insufficient to defeat a motion for summary judgment." *Palmer v. Marion County*, 327 F.3d 588 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) as stating that "[t]he object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). However, rebuttal can come from the allegations of a complaint, but only to the extent that they are based upon the plaintiff's personal experience. *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (requiring that allegations are admissible at summary judgment under 56(e) so long as they are "based on personal knowledge and [set] forth specific facts showing that there is a genuine issue for trial"). The fact that those statements may be "self-serving" is not a valid grounds for deeming them inadmissible. *See id.*

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).

**3.  ANALYSIS**

Plaintiff alleges that he was discriminated against for being disabled, which at the outset requires that he was disabled within the meaning of the ADA. *Cassimy v. Bd. of Educ. of Rockford Pub. Schs., Dist. No. 205*, 461 F.3d 932, 935-936 (7th Cir. 2006). Neither party has argued that Plaintiff actually had or has "a physical or mental impairment that substantially limits one or more of the major life activities," or a record of such impairment, two of the three means by which Plaintiff could qualify for ADA protections. 42 U.S.C. § 12102(2)(A-B). In this instance, therefore, Plaintiff must follow the third definition of disability and show that he was "regarded as" being disabled under the ADA. *See* 42 U.S.C. § 12102(2)(C); *Krocka v. City of Chicago*, 203 F.3d 507, 514 (7th Cir. 2000). According to this approach, "if the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *Mack v. Great Dane Trailers*, 308 F.3d 776, 781-2 (7th Cir. 2002).

In order to succeed, Plaintiff must show that Defendant considered him to be disabled, defined as "suffering from an impairment which 'substantially limits' a major life activity." *E.E.O.C. v. Rockwell Intern. Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001) (citing *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 481, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). As the major life activity being considered in this case is working, proof of substantial limitation requires that Plaintiff demonstrate he was considered "significantly restricted in the ability to perform either a

class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). "[I]nability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*

Plaintiff has pointed to no evidence of changes in his duties or altered attitudes of his immediate supervisors that might indicate he was considered "significantly restricted" in his ability to perform his job following the angioplasty. (*See, e.g.*, Grzybek Dep. at 9-10, 48-49.) After his medical procedure, he worked for a period of almost seven years in the same role as he had worked previously. In fact, Plaintiff acknowledges that he *increased* his workload after returning to work. The fact that Plaintiff was allowed to continue with his original work duties, without significant restrictions, provides compelling evidence that Soo Line did not view him as handicapped following the angioplasty. *See Krocka*, 203 F.3d at 514 (finding significant the fact that, "after becoming aware of his impairment, CPD allowed Krocka to continue working as a police officer, without any restrictions on the type of duties he could perform, his ability to carry a weapon, or any other aspect of his work").

Plaintiff nonetheless contends that Soo Line must have considered him disabled because there could have been no other reason for its annual demands for medical information. (*See* Pl.'s Summ. J. Resp. at 2-3 ("If Soo Lines did not regard him as having a disability, then why did it subject him, and not all other employees, to annual physical examinations?"); Pl.'s Facts Resp. ¶ 10.) However, Defendant's belief that Plaintiff was at greater risk of becoming significantly restricted in the performance of his duties, perhaps precipitously and disastrously, along with

precautions taken in response to that belief, are altogether insufficient to prove that Plaintiff was considered significantly restricted as a general matter.

The instant case parallels the Seventh Circuit's reasoning in *Krocka* . In that case, the Chicago Police Department ("CPD") learned that Krocka had been diagnosed with depression and began taking Prozac to alleviate his condition. The CPD responded to this by administering physical and psychological evaluations to determine Krocka's fitness for duty, and mandating participation in an employee monitoring program that included close observation and at least one blood test to determine his Prozac levels. However, the Seventh Circuit did not view this as proof that the employer considered him disabled for ADA purposes, because the determination was based on questions of health and safety and did not cut back on the employee's duties. *See Krocka*, 203 F.3d at 514 ("Participation in the PCP entailed additional monitoring of Krocka but does not appear to have affected his duties or responsibilities as a police officer in any way."). The Krocka court even acknowledged the possibility that an employer may overreact in responding to a perceived medical situation, and yet fail to demonstrate that the employee was considered substantially limited or restricted:

> Placement in the PCP [monitoring program] may have been an inappropriate response or an overreaction to Krocka's impairment. However, this is evidence that CPD took an adverse and unjustified employment action against Krocka because of his impairment. It is not evidence that CPD regarded that impairment as substantially limiting, and, thus, it is insufficient to show that CPD regarded Krocka as disabled. As the Supreme Court noted in [*Sutton*, 119 S.Ct. 2139], the ADA only provides protection from adverse employment actions for individuals with disabilities. Employers do not run afoul of the ADA when they make employment decisions based on physical or mental characteristics that are not impairments or that are "limiting, but not substantially limiting" such that they do not rise to the level of a disability under the ADA definition. *Sutton*, 119 S.Ct. at 2150. Krocka has provided evidence that his employer took an adverse employment action against him. However, he has

> provided insufficient evidence that his employer regarded him as disabled. Therefore, he has not shown that he is an individual with a disability who can bring a claim under the ADA.

*Id.* at 514-15.

Plaintiff in this case has failed to draw the distinction *Krocka* demands for making a "regarded as" determination under the ADA. Not every employment action taken as a result of a medical condition evidences that the employee was considered substantially limited, and a court must therefore consider each factual situation individually. Rather than provide any evidence with which this Court could address the issue here, Grzybek repeatedly alleges that his former employer was aware of his medical condition and altered the conditions of his work as a result of that awareness, concluding that this means they necessarily believed he was substantially limited. (*See, e.g.*, Pl.'s Resp. at 2-3.) However, there is abundant evidence that Soo Line treated Grzybek as fully capable of performing the duties of his position. Defendant himself admits that he met with no workplace resistance to carrying on his duties following the angioplasty. It is also uncontested that Defendant was willing to allow Plaintiff to continue his work so long as he satisfied the medical reporting demand. Indeed, this working arrangement was maintained for seven years. Employer demands for medical information do not generally suffice to show that an employee was considered disabled. *See, e.g., Wright v. Illinois Dept. of Corr.*, 204 F.3d 727 (7th Cir. 2000) (finding no evidence that employer considered its employee disabled where additional medical examination was " an attempt to ascertain the extent of [the employee's] claimed impairment"). In this case, the yearly reporting requirement was a minimal condition placed upon Plaintiff's employment, one which is significantly less onerous than those discussed in *Krocka*. Plaintiff has chosen to rely entirely on the reporting requirement and

Defendant's awareness of his medical condition, and in doing so has provided no evidence showing that Plaintiff was considered disabled by his employer.

In any event, even if Plaintiff had provided evidence that Defendant considered him significantly restricted in his ability to perform in the workplace, that would be insufficient to survive summary judgment. In order to succeed on a "regarded as" claim under ADA, Plaintiff cannot merely rely on showing how his perceived disability prevented or was believed to prevent him from performing the duties of his job. *E.E.O.C. v. Rockwell Intern. Corp.*, 243 F.3d 1012, 1018 (7th Cir. 2001) (citing *Sutton*, 527 U.S. at 491). Rather, he must demonstrate that he was considered significantly restricted "in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *E.E.O.C. v. Rockwell Intern. Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001). While a statistical survey of all possible work opportunities is unnecessary, some demonstration of how his alleged disability would have effected entrance into the surrounding job market is nonetheless essential. *See, e.g., Skorup v. Modern Door Corp.*, 153 F.3d 512, 515 (7th Cir.1998) (affirming summary judgment where ADA plaintiff failed to provide "general guideposts" from which the court could determine "whether her impairment foreclose[d] her from few, many, or most jobs in a particular class or in a broad range of classes"). Plaintiff has provided no such evidence, and therefore cannot survive summary judgment.

The restrictions placed upon Grzybek following his angioplasty may or may not have been based on reasonable employer determinations of health and safety. Just as in *Krocka*, however, changed conditions alone do not show that he was regarded as being significant restricted in the workplace. Plaintiff has provided no evidence on which a reasonable jury could

find that he was regarded as disabled pursuant to the ADA, and he has therefore failed to provide evidence sufficient to prove a necessary element of his claim. *See Celotex*, 477 U.S. at 322.

## 4. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **June 20, 2008**